Charles HOWARD, Margie Howard, Joe Langfitt, Barbara Langfitt, David Bolton, Gayle Dunn, Robert Dunn, Frank Robertson, Betty Pryon, David Mitchell, Janet Mitchell, Jim Thornhill, and Helene Thornhill, Relators,

v.

Charles CLACK, ·George Drum, Corky Crowder, Larry Holley, Charles Palmore, Joe Regian, Gwen Smale, Dale Stringfellow, and Martin Suber, as Members of the City Council of the City of Garland, Texas, Respondents.

No. 20196.

Court of Civil Appeals of Texas, Dallas.

Oct. 3, 1979.

John W. Bryant, Bryant & Beaty, Dallas, for relators.

John F. Boyle, Jr., Dallas, for respondents.

Before GUITTARD, C. J., and CARVER and STOREY, JJ.

GUITTARD, Chief Justice.

Relators in this original petition for mandamus are voters in the city of Garland who have sought to invoke the provisions of the

city charter for recall of one of the members of the city council. Their petition for recall was certified by the city secretary as containing the names of the requisite number of voters, but the city council has refused to call an election after making its own examination of the petition and determining that some of the purported signatures are not genuine and that others are of persons who have sought to withdraw their names. Relators seek a writ of mandamus under article 1735a, Tex.Rev.Civ.Stat.Ann. (Vernon Supp. 1978–1979), on the ground that after the city secretary certified the petition as containing the requisite number of names, the city council had no discretion to review the sufficiency of the petition and had only a ministerial duty to call an election. We agree with this interpretation of the charter. Accordingly, we grant the writ.

### Jurisdiction

■ Before discussing the merits of the petition for mandamus, we must consider respondents' objection that we have no jurisdiction under article 1735a because duties imposed by the charter are not duties imposed by "the laws of this state." We disagree. The statute gives us jurisdiction to issue the writ against public officers "to compel the performance, in accordance with the laws of this state, of any duty imposed upon them, respectively, by law, in connection with the holding of any general, special, or primary election . . . ." This statute cannot properly be interpreted as limiting our jurisdiction to enforcement of duties imposed by laws of statewide scope. A city with a charter adopted under the Home Rule Amendment, Tex.Const. art. XI § 5, has legislative powers not dependent on the general laws of the state. *Lower Colorado River Authority v. City of San Marcos*, 523 S.W.2d 641, 643–44 (Tex.1975); *City of Beaumont v. Bond*, 546 S.W.2d 407, 409 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.). Such a charter is declared by statute to be a "public act," and all courts are required to take judicial notice of it. Tex. Rev.Civ.Stat.Ann. art. 1174 (Vernon 1963); *City of Dallas v. Megginson*, 222 S.W.2d

349, 351 (Tex.Civ.App.—Dallas 1949, writ ref'd n.r.e.). Consequently, a duty imposed by such a charter is a duty "imposed by law" within article 1735a, on which our jurisdiction rests. *Nelson v. Welch,* 499 S.W.2d 927, 928 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ) (appellate court had jurisdiction, but denied mandamus on merits).

### Merits

■ Having determined that we have jurisdiction, we must consider the principal question, that is, whether the city council has authority and discretion to review the sufficiency of the petition for recall and decline to call an election if it determines that the petition does not have the requisite number of genuine signatures. We conclude that it has no such authority.

The pertinent provision of the charter is section 93, which provides:

Any member or all members of the council (including the mayor) may be recalled and removed from office by the electors qualified to vote for a successor of such incumbent by the following procedure: A petition signed by qualified voters entitled to vote for a successor to each member sought to be removed, equal in number to twenty-five (25) per cent of the number of votes cast at the last regular municipal election for that office which is the subject of the petition, shall be filed with the city secretary; provided that not less then eight hundred (800) signatures shall be required in the case of council members and not less than two thousand (2,000) signatures shall be required in the case of the mayor. Such petition shall contain a general statement of the ground for which the removal is sought. The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. One of the signers to each paper shall make oath before an officer competent to administer oaths that each signature is that of the person whose name it purports to be. Within ten (10) days

from the filing of such petition, *the city secretary shall examine the same and, from the list of qualified voters, ascertain whether or not the petition is signed by the requisite number of qualified voters,* and, if requested to do so, the council shall allow him/her extra help for that purpose. *He/she shall attach to said petition a certificate showing the results of such examination.* If by the city secretary's certificate, the petition is shown to be insufficient, it may be amended within ten (10) days from the date of such certificate by obtaining additional signatures. The city secretary shall, within ten (10) days after such amendment is filed, in case one is filed with him/her, make like examination of the said amended petition and, if his/her certificate shall show same to be insufficient, shall be returned to the person filing same and shall not be subject to amendment.

*If the petition be found sufficient, the city secretary shall submit the same to the council without delay and the council,* in the event the mayor or council member named in said petition fails to resign, *shall order and fix a date for holding the election . . . .* [Emphasis added]

Respondents contend that this provision limits the city secretary's authority to the purely ministerial task of comparing the names appearing in the petition with the list of qualified voters to ascertain whether the requisite number of qualified names appear and that she has no authority to decide whether any of the purported signatures are genuine. Further, respondents argue that in order to prevent fraud, some agency of the city must have authority before the election is called to determine whether the signatures are genuine, and that only the city council is in a position to make such a determination since it is authorized by section 21(i) of the charter to "[s]ummons and compel the attendance of witnesses and the production of books and papers before it whenever it may deem necessary for the more effective discharge of its duties."

We cannot agree with respondents because we find nothing in the charter expressly authorizing the city council to take any action with respect to a recall election other than that provided in section 93, which requires the council to order the election whenever the city secretary presents a certificate stating that the petition has been examined and found sufficient. Neither do we find any implied authority for the council to make its own investigation and determination of the sufficiency of the petition. Respondents point to no general language of the charter from which such authority can be implied as incidental. They rely on the council's authority in section 21(i) to compel the attendance of witnesses and the production of books and papers. This authority is limited to situations in which such action is deemed "necessary for the more effective discharge of its duties." We find no duties imposed on the council concerning a recall election that would make appropriate the exercise of such powers.

■ With respect to respondents' argument concerning protection against fraud, we need not consider whether the city secretary has authority to determine whether any of the signatures are fraudulent. Even if the charter fails to confer such authority on any agency of the city, that circumstance would not justify judicial recognition of authority in the council that cannot be found, either expressly or impliedly, in the provisions of the charter. Fraud, if it exists, may be dealt with as such. If discovered in time, it may be made an issue in the recall election. Criminal penalties are also available.

Our holding on this point is supported by the decision of the Supreme Court in *Weatherly v. Fulgham,* 153 Tex. 481, 271 S.W.2d 938, 940 (1954), in the analogous situation of a petition by an independent candidate for a place on the general election ballot. The court held that the Secretary of State, who had the statutory duty to examine the petition and certify the candidate for a place on the ballot, had no authority to inquire into facts outside the record for

the purpose of determining whether any of the signatures were forged or procured by fraud. The court pointed out that if forgery or fraud was committed, criminal penalties were available.

Good reason exists to explain why the people of Garland granted no such power to their city council. Section 93 provides that if the secretary finds the petition insufficient, and so certifies, the petitioners are allowed ten days from the date of the certificate to amend the petition by obtaining additional signatures. Respondents concede that if the secretary's certificate states that the certificate is sufficient, and the council rejects it as insufficient as a result of its own investigation, no such time for amendment would exist. It would be unreasonable to construe section 93 as permitting the petitioners to be thus deprived of their right to amend.

Moreover, to imply authority on the part of the council to make the ultimate determination of sufficiency of the petition would commit the decision to a body that could not be considered impartial. Every recall petition affects at least one of the council members directly, and contemporaneous petitions with respect to other members might well affect a majority, or, indeed, all members of the council. In that situation, each member of the council would be called on to vote on the sufficiency of petitions calling for recall of other members. Rather than create that possibility, the drafters of section 93 apparently intended to commit the responsibility of determining sufficiency of the petition to the city secretary, an impartial officer not subject to recall. We construe the charter in accordance with that evident intent.

This construction is directly supported by *Young v. State,* 87 S.W.2d 520, 522 (Tex. Civ.App.—Fort Worth 1935, writ ref'd), which held that the board of aldermen of the city of Wichita Falls had no discretion in the matter of calling a recall election because a charter provision similar to that now before us imposed the duty of determining and certifying the sufficiency of the recall petition on the city clerk rather than on the board of aldermen. Since writ of error in that case was "refused" without qualification, the decision must be regarded as authoritative. We see no conflict between *Young* and cases cited by appellee, such as *City Commission of Pampa v. Whatley,* 366 S.W.2d 620 (Tex.Civ.App.—Amarillo 1963, no writ) and *Vetters v. State,* 255 S.W.2d 588 (Tex.Civ.App.—San Antonio 1953, no writ). In *Whatley* the provisions of the charter are not quoted, and we cannot determine whether they were similar to section 93. *Vetters* stands for the rule that the city secretary's duties under a charter provision similar to section 93 are ministerial, but our holding in this case is consistent with a characterization of the duties of the Garland city secretary as ministerial.

■ We find that section 93 imposes on the Garland City Council a mandatory, ministerial duty to order a recall election on presentation of a petition accompanied by a certificate of the city secretary that the petition is sufficient. The undisputed evidence shows that the secretary has made such a certificate and that the city council has refused to order the election. Consequently, the writ of mandamus will be issued.

Mandamus granted.